**JOHNSON et al. v. SAN ANTONIO & A. P. RY. CO.   (No. 7778.)**

(Court of Civil Appeals of Texas. Galveston. Jan. 18, 1920.)

**1. Waters and water courses ⬤ 179(1)—Complaint in action for damages to crops by flooding held sufficient.**

In an action against a railroad company for damages to plaintiff's crops due to overflow caused by the construction of a railroad across a natural drain, complaint *held* sufficiently to allege that the backwater filled a bayou, and that the water which naturally came down such bayou met such backwater, and was obstructed thereby from flowing in its natural way, and that such backwater combined with the water naturally flowing so as to flood plaintiff's farm.

**2. Waters and water courses ⬤ 179(6)— Flooding of plaintiff's land by backwater due to railroad construction held for jury.**

In action against railroad company for damages to plaintiff's crops by overflow of water due to the construction of railroad, whereby water backed up a creek, thereby overflowing its banks and flooding plaintiff's lands, evidence *held* to require the submission of the question to the jury.

**3. Evidence ⬤ 474(11)—Opinion evidence in action for destruction of crops by flooding held admissible.**

In an action against a railroad company for flooding plaintiff's land by backwater caused by the construction of the road, it was not error to permit nonexpert witnesses, who had observed the flood and occupied land in the vicinity, to testify that from their knowledge

---

⬤ For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of conditions plaintiff's farm would have been covered by the flood waters if the railroad track had not been there.

Error from District Court, Ft. Bend County; Sam'l J. Styles, Judge.

Action by Mrs. Roberta T. Johnson and another against the San Antonio & Aransas Pass Railway Company. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

Meek & Kahn, of Houston, for plaintiffs in error.

Schwartz & Bagby, of Hallettsville, D. R. Peareson, of Richmond, and W. B. Garrett, of Austin, for defendant in error.

LANE, J. This suit was brought by Mrs. Roberta T. Johnson, joined pro forma by her husband, E. R. Johnson, who will, for convenience, be hereinafter called appellants, against the San Antonio & Aransas Pass Railway Company, hereinafter called appellees.

For cause of action appellants alleged:

That on or about the 28th day of April, 1915, appellant Roberta T. Johnson was the owner of 576 acres of land lying about 2 miles east of the Brazos river, about 1½ miles north of the railroad of appellee, and about the same distance north of the town of Simonton in Ft. Bend county, Tex.; that at such time she had growing on said land crops of corn, cotton, and other products of the value of $33,200; that the Brazos river is a flowing stream and a natural water course, its general course being from north to south; that it has sharp crooks and bends, and that appellant's farm is located in what is known as the Brazos bottoms, and known as high valley land; that all through the Brazos Valley there are natural drains, and in high water or in excessive rainfalls the low lands in the bottom carry the water on south and empty it into the Brazos river as well as the low Brazos bottom carries south the overflow waters from the river; that from the Brazos river east for a mile and a half, in the Brazos Valley along where appellee's railroad crosses same, is low and is a natural drain and outlet for flood waters and excessive rainfalls; that there are natural drains and low places between appellant's land and the prairie land, by which excessive rainfalls and flood waters are carried off if not interfered with, which comes from the north; that this appellee's railroad passes the town of Fulshear, which is situated east of the Brazos river, at about the edge of the prairie; at this point it enters what is known as the Brazos bottoms, and from this point to Brazos river, which is 5 or 6 miles, the appellee's roadbed passes across the valley, and over many different surveys, including the Noel F. Roberts league, the Westall league (being the league in which appellant's farm is situated), passing on west across the Andrew Roberts league, where it strikes and crosses the Brazos river, and from the bank of the river east along where appellee's road passes for one-half mile the land is low, the elevation being from 10 to 12 feet lower than at the point where it passes Simonton (which is south of appellant's land); that across the Roberts league and for a distance of a mile and a half from the river east all this bottom land is low, and a natural drain for excessive rainfalls and flood waters that come out of the river, and would naturally flow south over said low lands if not interfered with.

That the appellee's roadbed from the town of Simonton, which is almost immediately south of appellant's farm, runs in a westerly direction almost directly west, and crosses the Brazos bottoms and low lands at right angles, and on reaching the river crosses also at right angles, or about 25 degrees to the south; that the appellee, in constructing said road across said Brazos river, built and constructed a large bridge over same, and for that purpose it constructed an immense large iron abutment on the east and west banks of the river, and erected two immense iron piers, being from 8 to 10 feet in diameter, which are and were placed directly in the stream on which to rest the bridge; that on the west bank of the river the appellee also constructed, right on the edge of the water, another immense pier of iron; at the point where said road crosses said river the width of the stream is about 250 or 300 feet; the land on the east side of the river for a distance of at least a mile and a half along appellee's right of way is what is known as low lands, and is a natural drain for excessive rainfalls and flood waters from the Brazos river; that the appellee, when it constructed its bridge from the east end of said bridge, constructed trestles and solid embankments to the town of Simonton; that said trestles and embankments were so negligently constructed as to obstruct the natural water course in the valley lying just east of the Brazos river, and between said river and the town of Simonton; "that about the latter part of April, 1915, anywhere from the 28th day thereof to May 1, 1915, the Brazos river became bank full, and began to overflow the low lands on either side thereof, and on said dates, as the river began to overflow the low lands on the east side, as the flood waters reached appellee's road dump through the low lands (which were natural drains for flood waters), said solid embankment held said waters, and would not permit them to pass on south unobstructed, but they were caught, obstructed in their natural flow, held, and impounded by appellee's dump, and were forced east and northeast, at places practically going uphill, the culverts or trestles provided by appellee being insufficient to let the

water that came out of the Brazos river pass over the low lands without being obstructed as it should have and would have done, *but said flood waters were forced east and northeast along appellee's dump, on the north side thereof, passing over the low lands opposite its railroad dump on the east side of Brazos river until it reached a draw drain or creek, known as Big bayou or Bessie's creek, which is a natural drain, said waters being held by appellee's dump and not permitted to go south, but being forced east and northeast; that it overflowed Big bayou, causing such water as came down same to be held and obstructed and by reason of said water being forced into Big bayou north of appellee's dump, the water coming down Big bayou could not pass on south, but its flow was interfered with, and the water forced into Big bayou by the appellee's dump and, the waters that naturally should have come down Big bayou were caught and held in said bayou by appellee's embankment or dump, and caused said Big bayou to rise and overflow its banks in low places, flowed over appellant's crops, actually causing the water to back up Big bayou by reason of the fact that it could not pass on south, and said water was held and backed up Big bayou, which passed through appellant's farm, and when said banks of Big bayou which passed through appellant's farm were bank full at the low places thereof, the water was forced out over the banks of Big bayou, and caused to flow out and across appellant's land, submerging it entirely, and destroyed all of his crops, said crops being scalded and water-soaked, and all of said crops died and were entirely lost to plaintiff."*

That appellee negligently and unskillfully built said embankment, negligently and unskillfully failed to leave openings, culverts, or sluices therein according as the lay of the land required for the necessary drainage thereof, and by reason thereof at the dates alleged the water from the Brazos river was not permitted to flow as it aforetimes naturally had done; "that the appellee was guilty of negligence in constructing two large piers in the bed of said river; that said piers so constructed seriously obstructed the free and natural flow of the water in the natural bed of the river, and when appellee built its bridge, and at various times since then, it had gone into the bed of the stream and under its bridge, and north thereof, at different places therein had hauled and dumped into said river hundreds of carloads of sand, rock, and gravel, and almost, if not entirely, choked and filled up said river from the east bank to the piers in the center of the river, and from the piers in the center of the river to west bank of the river they had placed in the bed of the river, in this space, rock, sand, dirt, gravel, and other hard substances, for the purpose of filling up said stream; and as a matter of fact, from the end of appellee's

trestle at the bridge, it has built to a point east a solid embankment heretofore complained of; through the bottom to the prairie land they built a continuous embankment, or dump, leaving no openings therein whatever save and except across the creeks, sloughs, and lakes for a distance of approximately 6 miles; and appellants show that Big bayou, afore alleged, which passes through their farm, is a natural drain for excessive rainfalls, and for flood waters that should come from the north, but that on or about the date afore alleged there was no flood waters that come from the north down Big bayou sufficient to cause same to overflow its banks if same had not been interfered with by appellee's dump and the waters forced therein by reason of the construction of its dump; that the flood waters that overflowed their land came out of the Brazos river, which, as afore alleged, were caught and held by appellee's dump by reason of its negligence in so constructing and building its railroad as to interfere with the flow of flood waters as they naturally would have flowed, and was forced out of the low lands in the Brazos Valley onto the high land in said valley, crossing same, and into Big bayou, filling it as afore alleged, causing it to become bank full and back up, and said water that came into Big bayou overflowed the lands on either side of same for a distance of about 4½ miles north of the dump, all of which was occasioned by reason of appellee having built its railroad dump so as to interfere with and prevent the flow of flood water as it naturally would have flowed if said railroad dump had not been constructed; and appellee was guilty of negligence in building its bridge as afore alleged, and its piers and abutments, and in filling in the channel of the river as afore alleged, and in so building and constructing its railroad dump as to interfere with the flow of flood waters, passing from the Brazos river as afore alleged; *and that by reason of all of said acts of negligence, or one or more of same,* on or about between from the 28th day of April, 1915, to the 1st day of May, 1915, appellant's crops, afore described, were growing, and were of the value afore alleged, but as the proximate result of appellee's negligence, as afore alleged, all of said crops were destroyed, which damaged appellants in the sum of $33,200, being the reasonable fair value of said crops as they then stood upon the ground."

That prior to the overflow and damages her land was worth $100 per acre; that by reason of the overflow, which was caused by appellee as set out in her petition, 75 acres of said land was damaged and lessened in value about $75 an acre, leaving its present value at about $25 per acre, and the damage to said land in the sum of $5,625.

The prayer was for judgment for the aggregate sum of $38,825.

Defendant answered by general demurrer, and special exception, and general denial, specially denying that it negligently or unlawfully built its roadbed and embankment, and specially denying that it failed to leave sufficient culverts and outlets as the natural lay of the land required for the necessary drainage thereof, and also specially denying that by building its roadbed it caused the overflow waters to be held and diverted from its natural course to the injury of plaintiff; specially denying that it was guilty of any negligence in building its bridge over the river, or in constructing the piers or abutments supporting same; specially denying every act of negligence set out by the plaintiff; and it alleged that the overflow of the Brazos river was unusual and unprecedented, and one which would not have been reasonably expected or anticipated, and foreseen by the exercise of reasonable foresight, etc., and that the overflow was due exclusively to natural causes and to the act of God; that the whole entire valley was inundated and the crops destroyed and washed away; that said crops would have been destroyed by said flood if defendant's railroad had not been there; and that it was neither morally nor legally responsible to the plaintiffs for their losses claimed by them to have been sustained; and it prayed to be discharged with its costs.

It will be seen from the pleadings that the question that was before the court was whether or not the appellee, in building its dump across the Brazos Valley had so constructed same that in high water, or flood times, said embankment caused or contributed to cause the injury to and destruction of appellant's crops in the manner alleged by plaintiffs.

A jury was selected and impaneled to try the cause, and after the evidence for both parties had been introduced the court instructed a verdict for the defendant. Judgment was accordingly rendered, from which the plaintiffs have appealed.

By the first assignment it is, in substance, insisted that there was competent evidence tending to show that the railroad of appellee was negligently constructed as alleged by plaintiffs; that said railroad dump negligently constructed held the flood waters, and caused the same to flow over and cover the low elevations west and southwest of plaintiff's farm, and to flow east and northeast, and to cover all of said low lands lying between said dump and plaintiff's farm, and to flow into and fill Bessie's creek south of said farm to such extent that such water as naturally came down through Bessie's creek was held and not permitted to flow on south, causing said creek to rise and water to run out at the low places in its bank onto plaintiff's land, destroying his crops and damaging about 75 acres of his land to the extent at least of $50 per acre; and that all of his crops, aggregating in value the sum of $35,000, were destroyed, and that such evidence was of such probative force as to require of the court a submission of the question raised thereby to the jury for their findings, and that the court erred in not so doing.

The contention of appellee, as disclosed by its brief, is that the sole issue made the basis of plaintiff's suit is that the appellee's railroad bed or embankment caught and held the overflow or flood waters and forced the same to flow east and northeast along the north side of the railroad track over low lands and into Big bayou or Bessie's creek, and to back up said bayou or creek north, and that this backwater alone caused said bayou or creek to overflow its bank onto appellant's farm, to their damage as alleged by them; that is, that the backwaters only caused the damage. They further contend that there was no evidence showing that said backwater overflowed the east bank of said bayou onto appellants' farm, but, to the contrary, it is shown by the overwhelming evidence that the water that overflowed said bayou and appellants' farm came from the north and northwest, and therefore the court properly instructed a verdict for appellee.

[1] We cannot sustain this contention. We think it clearly appears from the italicized part of the pleadings of the plaintiffs, as hereinbefore set out, that the plaintiffs alleged that the backwater filled the bayou, and that the water which naturally came down said bayous from the north met this backwater and was obstructed thereby from flowing south, as it would have flowed had it not been so obstructed, and that the backwater and the water from the north combined overflowed the east bank of Big bayou or Bessie's creek onto plaintiffs' farm.

[2] We also think the evidence introduced tending to support the allegations of plaintiffs demanded the submission of the case to the jury, and therefore the court erred in instructing a verdict for appellee and in not submitting the case to the jury under proper instructions. In view of a reversal of the judgment and another trial we deem it improper to discuss the evidence which we think demanded a submission of the case to the jury further than to recite the testimony of the witness Walter Stewart, as follows:

"I was there in 1915 when that place was submerged, or partly submerged, with water, at which time I moved my family away from there, but I stayed there myself, and I naturally observed where the water came from that submerged the land, as a fellow would naturally watch that when he is looking for a flood. For two or three days before we got any water that Simonton community was all covered with water. Spencer & Mullens had water on their crops before we got it on ours. Then the first appearance of water on our place seemed to

back over right at Unmensing's place. That was the first water we got—where the Unmensings lived—and then it began to break over all around the bayou, and then it was overflowing over all the places all around the bayou and plumb all around—clear up to the extreme east corner of the farm."

"It was backing up from the south, and it began to come over on us right here, along about that point, and took this course across here (indicating on the map); the water was coming over the east bank of the creek. At the time the water broke over the east bank of the creek onto our land there was a current coming around the bayou, filling it up from the south—the water was filling up Bessie bayou from the south, and going around all the time."

[3] We do not think the court erred in permitting Robert Ransom to testify that from his knowledge of the valley between the Brazos river and Bessie's creek, and his observance of the flood waters both north and south of the railroad track at the time of the floods of 1913 and 1915, and from his familiarity with the railroad track and dump the volume and extent of the water and the floods as he saw them, and from his knowledge of the plaintiffs' farm and its location, it was his opinion that the plaintiffs' farm would have been covered by the flood waters of 1915 if the railroad track had not been there.

In the case of Railway Co. v. Haskell, 4 Tex. Civ. App. 550, 23 S. W. 546, it is said:

"The point raised in the second assignment of error is that 'the court erred in permitting plaintiff to prove by himself and his witnesses, Jeff Haskell, T. J. Kerr, and W. F. Clark, over defendant's objection, that "in their opinion defendant's embankment caused the overflow of plaintiffs' land," and erred in refusing to rule out their said testimony after allowing them to testify, because said witnesses were not experts, and it had not been shown by their testimony that they were in position to know the facts such as would justify the court in permitting them to give their said opinions to the jury.'

"We do not think the court erred in admitting this testimony. 'All witnesses must state facts only, except in certain cases in which persons of skill and learning may give their opinion. There are cases, however, in which unskilled witnesses may give their opinions, and there is still another class of cases in which they may do so when they give, along with the opinions, the facts on which they are founded. * * * The case of Porter v. Manufacturing Company, 17 Conn. 249, resembles very much the one before us. In that case a witness who had long been familiar with a particular region, its streams and the rainfall, was permitted to give his opinion upon the question of whether a dam across a stream had not been raised so high as to be unsafe. The court said: "The opinion of such persons upon a question of this description, although possessing no peculiar skill on the subject, would ordinarily be more satisfactory to the minds of the triers than those of scientific men who were personally unfamiliar with the facts of the case. And to preclude them from giving their opinions on the subject, in connection with the facts testified to by them, would be to close an ordinary and important' avenue to the truth. * * * On such a question the judgment of ordinary persons having an opportunity of personal observation, and testifying to the facts derived from that observation, was equally admissible, whatever comparative weight their opinions might be entitled to, of which it would be for the jury to judge."' Railway v. Klaus, 64 Tex. 294, 295; Railway Company v. Hadnot, 67 Tex. 503 [4 S. W. 138]; Commonwealth v. Sturtivant, 117 Mass. 122 [19 Am. Rep. 401]."

For the error pointed out the judgment is reversed and the cause remanded.

Reversed and remanded.