RINEHART et al. v. TOMERLIN et ux.

No. 15106.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 17, 1950.

Rehearing Denied March 24, 1950.

Clark, Craik, Burns & Weddell, Stegall & Stegall, and Clifford C. Stegall, all of Fort Worth, for appellants.

Richard Owens, of Fort Worth, for appellees.

SPEER, Justice.

This is an appeal by Mary M. Rinehart et vir. from a non obstante veredicto. take nothing judgment entered in a jury case, wherein appellants had sued appellees, Jackson N. Tomerlin et ux., in trespass to try title and for cancellation of a deed from appellants to appellees alleged to be void.

On January 22, 1949, appellants purchased land described as "Lots Nos. 10 to 13, both inclusive, in Block No. 24, Turner's Subdivision of a part of Beacon Hill Addition to the City of Fort Worth, Texas." Prior deeds in the chain of title described the land similarly and in some instances added that the lots composed a block of land 200 feet by 200 feet. The four lots were Mrs. Rinehart's separate property. The recorded plat shows the lots each to be 50 feet by 200 feet. Appellants subsequently had the County Surveyor to go upon the ground and make a survey and plat the area. He found that the northeast corner of Lot 13, Block 24 of the Turner's subdivision was common with the northeast corner of Block 24, Beacon Hill Addition, from which the Turner's subdivision was taken. The surveyor had before him the recorded plats of Beacon Hill and Turner's subdivision. He also had the plat of the Kuykendall subdivision of the area north of Lot 13, Turner's subdivision; it is not clear from the testimony, however, which of the two subdivisions platted a street between Turner's subdivision and the Kuykendall. Such street as was provided for between the two subdivisions was never opened to the public. There is testimony in the record to the effect that Kuykendall owned from the north line of Lot 13 of Turner's subdivision and that appellees purchased from Kuykendall such interest as he had in it after the City of Fort Worth failed to accept it and open the street for use. That chain of title was by agreement omitted from the record before us. Appellees purchased Lot No. 1, Kuykendall's subdivision, and lived on it, this lot lies immediately north of the unopened street shown on the plat to be "Boylston Street."

At all times material here appellants' Lots 10, 11, 12 and 13 of Block No. 24, Turner's Subdivision, were fenced and enclosed therewith was the 31 foot unopened "Boylston Street." The North line fence of this enclosure was on or near the south line of Kuykendall's Lot No. 1, owned by appellees, and the north line of "Boylston Street." The testimony is conflicting as to whether appellants knew of the existence of the 31 feet laid out for "Boylston Street." Appellees say they talked about it and appellants deny it.

Appellants orally agreed to sell and appellees agreed to buy 55 feet off of the north side of appellants'. tract. Appellees advised an attorney to draw the deed. The attorney had access to the records of the property owned by both parties and prepared the deed so that appellants would be conveying all of Lot No. 13 (50 feet in width) and 5 feet off the north side of Lot No. 12, this being the north 55 feet owned by appellants as disclosed by the records.

The parties met at the attorney's office to close the deal. The notary public read the deed over to appellants and before it was signed the question of the description was raised by Mrs. Rinehart, all of which indicated that she did not know the exact location of her Lots Nos. 13 and 12, but went on and signed and acknowledged the instrument. The question thus raised by Mrs. Rinehart forms the basis of this

appeal and will be more fully set out later in this opinion.

One point of error is relied upon. To show that the deed should have been canceled, appellants in their brief summarize the point in this language: "The deed from the Rineharts to the Tomerlins conveying the separate property of Mary M. Rinehart was void because the notary taking her acknowledgment made an erroneous explanation to her as regards the land she was conveying and intended to convey, in violation of the statutes of Texas with respect to conveying the real estate of a married woman."

Appellants' petition is in part a statutory action in trespass to try title to Lot 13 and 5 feet off of the north side of Lot 12, Block 24, Turner's subdivision in the City of Fort Worth, Tarrant County, Texas. Having theretofore executed a deed to appellees to the land, appellants sought in this action to cancel their deed. Grounds for cancellation include allegations of fraud by appellees in certain respects; but appellants no longer rely upon any grounds alleged other than those concerning the acts of the notary public who took their acknowledgments, as above indicated.

In view of the contentions of all parties, we think it proper to quote the applicable pleading of appellants on this phase of the case:

"Plaintiff would further show the court that when the Notary Public took the acknowledgment of plaintiff, he failed to take a proper acknowledgment in that he failed to explain the legal effect of the deed; that said Notary Public knew or should have known that the land conveyed was the separate property and estate of plaintiff, and further that she was not sure as to the exact location of the land conveyed since she pointed out to him that she was conveying 55 feet from said fence line on north part of her property; that a survey would have to be made to determine the legal description of the 55 feet conveyed. Yet, in the face of such obvious uncertainty on part of plaintiff, said Notary Public took her acknowledgment, and further, said Notary Public knew or

should have known that such acknowledgment was defective to convey the separate property of a married woman."

We next have the conflicting contentions of the parties concerning a previous oral agreement regarding the sale and purchase of the ground in controversy. However, the oral agreement would not be controlling here after they had attempted to carry such agreement into execution by a written conveyance, except, perhaps, as bearing upon the intention of the parties in cases of fraud and mutual mistake, neither of which is now in this case.

At the conclusion of taking testimony, both appellants and appellees filed motions for instructed verdicts. Each was overruled and three special issues were submitted to the jury. The issues were answered favorable to appellants. On motion of appellees the jury's verdict was disregarded and judgment non obstante veredicto was entered for appellees upon the theory that the court should have granted appellees' motion for an instructed verdict.

In response to the first special issue the jury found that prior to the drawing of the deed the parties had agreed to sell and buy only 55 feet of land extending immediately south of the fence (the fence seems to have been approximately on the north line of the unfenced street above pointed out). The trial court obviously disregarded this finding because such agreement was oral and it was apparently consummated by written conveyance describing the land definitely, since there was no evidence of fraud or mutual mistake. By special issue No. 2 it was found that the notary public taking the acknowledgment of Mrs. Rinehart advised her that it was necessary to describe the property as Lot 13 and the north 5 feet of Lot 12 in order to convey the property she had agreed to sell. By special issue No. 3 it was found that Mrs. Rinehart would not have signed the deed but for such representations by the notary.

Appellees' motion for judgment non obstante veredicto in substance charged that the first jury finding was immaterial in determining if the notary public performed his official duty; that there was no plead-

ing by appellant that the notary public failed to fully explain to Mrs. Rinehart the nature and character of the instrument she was signing, nor that the notary erroneously explained it by telling her that the deed had to describe the property as it did in order to convey the land she had sold.

It was further charged in the motion that it was neither pleaded nor proved that Mrs. Rinehart would not have signed the deed as found in response to the third special issue but for the erroneous statement found in response to special issue No. 2 to have been made by the notary. A careful study of the trial petition and the testimony leads us to believe the matters set out in the motion were true in this respect.

Under Rule 279, Texas Rules of Civil Procedure, a court should only submit controlling issues raised by the written pleadings and evidence. Again, under Rule 301, T.R.C.P., a judgment must conform to the pleadings and the evidence, etc. Under the provisions of the last cited rule, after submission and answer of special issues, on proper motion and notice the court may disregard the jury verdict and render judgment non obstante veredicto if he should have given a requested peremptory instruction. It seems this is what the trial court did. Appellants treat the action of the court in entering a judgment non obstante veredicto as tantamount to having instructed a verdict for appellees on their original motion.

Bearing in mind the point of error before us as above set out, we must determine whether or not the notary public properly discharged his duty to appellants. Article 1299, R.C.S., requires that an acknowledgment of a married woman shall be taken privily and apart from her husband. Article 6608, R.C.S., provides a form of certificate for the notary in such cases and that it must be substantially followed. The certificate attached to the deed sought to be canceled is in the precise language of the statute. Appellants' attack here is against that part of the certificate which reads, " * * * and having the same fully explained to her * * *."

Mrs. Rinehart's testimony on the point, as best we can paraphrase it, is this: The notary read the deed over to her and her husband and when he reached the description as being Lot 13 and 5 feet on 12, Mrs. Rinehart said: "No we don't know where Lot 13 is or Lot 12 for that matter because it has never been surveyed since we had it that we know anything about. The only way we can tell you is starting at the fence, we gave them the first 55 feet south of the fence." The notary replied, "We can't determine it like that, according to legal technicalities it has to be described as Lot 13 and 5 feet of 12," and she said, "Well if that is the way it has to be, I don't know much about law but if that is the way it is described I suppose it will be all right. We had no reason to think there was anything under our fence but what we bought." Mrs. Rinehart then signed and acknowledged the deed. She said on cross-examination substantially that she meant to convey the north 55 feet that she owned and didn't know where her lines were except at the fence which her grantor told her was the line; that she did not intend to convey anything she did not buy.

It would be difficult to enumerate in a single case what might or might not be material in all situations for a notary to explain to a married woman who signs a deed in order to substantially meet the requirements of the statute that he had "fully explained" the same to her. Certainly he would not have complied with that requirement if he explained to her that the effect of an instrument was a lease or a lien or a life estate when in fact it was a conveyance of the fee title. Norton v. Davis, 83 Tex. 32, 18 S.W. 430; Texas Osage Co-op. Royalty Pool v. Guzman, Tex.Civ.App., 153 S.W.2d 239. Appellants cite and rely upon the two cases last mentioned.

Article 6605, R.C.S., provides that the officer taking the acknowledgment of a married woman shall "fully explain" the instrument to her. Broadly speaking, it has been held that such full explanation requires the notary public to explain to her the "tenor and effect" of the instrument

she is signing. Also if he knows of a fraud being practiced on her he must reveal it to her. 1 Tex.Jur., p. 541, sec. 139; 1 C.J.S., Acknowledgments, § 79, page 838, "Explanation of Instruments." The tenor or kind of instrument involved here is a deed of conveyance and its effect is to pass the title to appellees. The deed was admittedly read over to appellants and it is not contended that Mrs. Rinehart did not understand its nature and the effect it had in passing fee title. With this knowledge she signed and acknowledged it in the terms of the notary's certificate. The effect of her contention here is that it did not describe the land that she thought she owned and intended to convey. We think the trouble does not lie with the notary but with Mrs. Rinehart in signing and acknowledging the deed instead of declining to sign and acknowledge the deed which she contends was unsatisfactory to her.

In Ward v. Baker, Tex.Civ.App., 135 S.W. 620, the court held that the notary public is not required to make a full investigation of the facts and circumstances surrounding the transaction in order to enable him to fully explain to a married woman the tenor and effect of the instrument she is signing.

We do not think it was required of the notary public in this case to ascertain the physical location of the land conveyed nor the condition or extent of grantor's title, nor the location of fences or other improvements thereon. We think it no more incumbent upon the notary to do these things than it would be for him to determine and express his opinion to the grantors as to the expediency of making the sale.

Referable to the binding effect of the notary's certificate on parties to a conveyance, our courts have made distinctions in three different situations. (1) Where it appears that the married woman did not in fact appear and acknowledge before the officer; (2) when applied to subsequent innocent purchasers for value; and (3) instances in which the married woman did personally appear, sign and acknowledge before the officer whose certificate is in statutory form. First and second classes need not be noticed here because they are not involved in this record. In the instant case, Mrs. Rinehart admitted that she did appear before the officer and signed the instrument. The officer's certificate is in statutory form and our courts hold that in such circumstances the certificate is conclusive of the facts therein set forth unless fraud or imposition are alleged; such as fraud of the purchaser or a fraudulent combination between the notary public and the interested parties. Davis v. Kennedy, 58 Tex. 516, 519. That cited early case laid down the rule stated above and pointed out the dangers to and uncertainty of land titles if a grantor should be allowed to lightly impeach a certificate of the notary when in statutory form. In the case before us the appellants did originally allege fraud on the part of appellees in certain matters but since there was no evidence to support the allegation no issue was submitted on it and none was requested; hence it was abandoned. There is nothing in the record before us to indicate that appellees, in any way, participated in the wrongs they here charge to the notary public in an effort to impeach the truth of his certificate.

The principles laid down in Davis v. Kennedy, supra, have been uniformly followed and never repudiated. Some such cases are: Haskins v. Henderson, Tex.Civ. App., 2 S.W.2d 864; Ward v. Weaver, Tex.Com.App., 34 S.W.2d 1093; Blankenship v. Stricklin, Tex.Civ.App., 77 S.W.2d 339; Texas Osage Co-operative Royalty Pool v. Sullivan, Tex.Civ.App., 93 S.W. 2d 566; and Cockerell v. Griffith, Tex.Civ. App., 255 S.W. 490. In the two last cited cases it was further held that the unsupported testimony of the person whose acknowledgment is certified is insufficient to impeach the truth of the certificate.

Under the cited authorities and the whole of the record before us, we have concluded that the appellants have not shown themselves entitled to a cancellation of the deed in question, and that the trial court should have given appellees' requested summary

instruction; in view of these conclusions the trial court did not commit reversible error in disregarding the jury verdict and entering the non obstante veredicto judgment for appellees. The judgment of the trial court is affirmed.