**TEXAS AND NEW ORLEANS RAILROAD COMPANY, Appellant,**

v.

**J. Earl BARNHOUSE et al., Appellees.**

No. 12945.

Court of Civil Appeals of Texas.

San Antonio.

July 18, 1956.

Rehearing Denied Sept. 5, 1956.

Keys, Russell, Keys & Watson, Corpus Christi, for appellant.

Lieck & Lieck, San Antonio, Werner A. Gohmert, Alice, for appellees.

W. O. MURRAY, Chief Justice.

This is a suit by J. Earl Barnhouse and nineteen other residents of Craig Park Addition to the City of Alice, in Jim Wells County, Texas, against the Texas and New Orleans Railroad Company, for damages allegedly sustained by reason of the failure of appellant to maintain its roadbed with the necessary culverts and sluices, as required by the natural lay of the land, for the drainage of surface water therefrom.

The trial was to a jury and, based upon the verdict of the jury, judgment was rendered in plaintiffs' favor in the total sum of $10,683.23, from which judgment Texas and New Orleans Railroad Company has prosecuted this appeal.

In 1951 there was a heavy rainfall and a resultant flood in and near the City of Alice in Jim Wells County, Texas. The Texas and New Orleans Railroad Company, hereinafter referred to as T&NO, maintains its roadbed in a northerly and southerly direction through Alice, while the Texas-Mexican Railway, hereinafter referred to as Tex-Mex, maintains its roadbed in an easterly and westerly direction through Alice, and these two roadbeds divide the city into four almost equal sections. Appellees herein live in the northwest section of the city, known as Craig Park. Craig Park is north of the Tex-Mex and west of the T&NO tracks. The lay of the land in that area is generally from west to east. There are three main low places where water flows under the tracks of appellant in the City of Alice: On the north side is San Diego Creek, further south, but still north of the Tex-Mex tracks is a low place near Mississippi Street, and south of the Tex-Mex tracks is Lattas Creek. Craig Park is in the vicinity of Mississippi Street. Appellees' claim for damages was based upon the contention that the T&NO had not maintained a sufficient passageway for flood waters near Mississippi Street (the overflow water from San Diego Creek and water from a heavy rain on September 13, 1951, in the vicinity of Craig Park), to pass under its tracks, and thus the water was impounded and overflowed into the houses of appellees, causing damages. Appellant defended, among other things, upon the contention that the rainfall on September 13, 1951, was unprecedented and that the damage was caused by an act of God and was not due to any negligence on its part.

The jury, in answer to questions propounded, found as follows:

(1) That the T&NO failed to maintain its roadbed on or about September 13, 1951, with necessary culverts and sluices, as the natural lay of the land required, for the drainage of the surface waters therefrom, and that such negligence was a proximate cause of appellees' damages.

(2) That the flood complained of was not an unprecedented flood.

(3) That appellees' damages were not caused solely by an act of God.

(4) That the Tex-Mex failed to maintain its roadbed on or about September 13, 1951, with necessary culverts and sluices, as the natural lay of the land required, for the drainage of the surface water therefrom, but that such failure was not the sole proximate cause of appellees' damages.

(5) That the damage to the respective houses of appellees immediately after the flood of September, 1951, was then capable of being repaired and the houses restored to substantially the same condition existing immediately before September 13, 1951. The jury then found the cost of restoring each of the houses and the value of the personal property lost or destroyed and the cost of repairing personal property where it could be repaired. The total amount of these findings was $10,683.23.

Appellant's first contention is that the court erred in overruling its motion for judgment non obstante veredicto.

A motion for judgment non obstante veredicto should only be granted where there is no evidence to support the findings

of the jury, and where there is any evidence of probative force to support the jury findings the motion for judgment non obstante veredicto should be overruled. Rule 301, T.R.C.P.; Hicks v. Frost, Tex. Civ.App., 195 S.W.2d 606; Texas & Pacific Ry. Co. v. Hagenloh, Tex.Civ.App., 241 S.W.2d 669, affirmed, 151 Tex. 191, 247 S.W.2d 236; Brewer v. Maryland Cas. Co., Tex.Civ.App., 245 S.W.2d 532.

■ A judgment non obstante veredicto should be rendered only where an instructed verdict would have been proper before the cause was submitted to the jury. Walston v. Mabry, Tex.Civ.App., 225 S.W.2d 1014; Rinehart v. Tomerlin, Tex.Civ.App., 227 S.W.2d 876; Broussard v. Burton Const. & Shipbuilding Co., Tex.Civ.App., 265 S.W.2d 665; Hicks v. Matthews, 153 Tex. 177, 266 S.W.2d 846.

So the question here presented is whether or not there is some evidence of probative force to justify the submission to the jury of the question of unprecedented flood or act of God.

■ The court defined the term "unprecedented flood" as follows: "You are instructed that by the term 'unprecedented flood' as used in this charge, is meant such an extraordinary amount of surface water upon the surface when assembled there, either from rain or overflow of a creek or creeks (or from rain and an overflow of a creek or creeks) as could not have been anticipated nor foreseen by a person of ordinary prudence from the happening of the same or similar floods prior thereto within the memory of man." No point is brought forward criticizing this definition, so we may accept it as a proper one under the facts of this case.

There is evidence in the record of numerous floods in Alice. Floods of somewhat similar proportions were shown to have occurred in the years 1897, 1919, 1939, 1941 and 1949. Appellant and its predecessor, S. A. & A. P. Ry. Co., have mantained their roadbed through Alice many years.

At one time there were several trestles between the intersections of the two railroads and San Diego Creek. The railroad company had gradually been building its track higher and higher in the vicinity of Craig Park. It had taken out three trestles and placed one culvert in their place. The culvert was sufficient to take care of the rainfall on the area drained to this culvert, but was not sufficient when overflow water was added from San Diego Creek. There was evidence that on other occasions the flood waters had gone over the railroad tracks in the vicinity of Craig Park.

In 1949 the overflow waters from San Diego Creek were much greater than in the 1951 flood. However, in Craig Park the flood was greater in 1951 than in 1949, due to the combination of a very heavy rain in the Alice area and the overflow from San Diego Creek. In other words, in 1951 the flood in Craig Park was a combination of flood waters from San Diego Creek and local heavy rains, while in 1949 there was practically no local rain and the entire flood was caused by an overflow from San Diego Creek.

■ The jury found that an unprecedented flood or an act of God was not the cause of the 1951 flood, and we conclude that there was evidence of probative force to support the findings of the jury. Therefore, the court did not err in overruling appellant's motion for judgment non obstante veredicto. It is true that there is a difference between the term "unprecedented flood" and "an act of God," but under the facts in this case the jury's findings on both questions were supported by some evidence of probative force. Gulf, C. & S. F. R. Co. v. Holliday, 65 Tex. 512; Sabine & E. T. R. Co. v. Wood, 69 Tex. 679, 7 S.W. 372; City of Austin v. Howard, Tex.Civ.App., 158 S.W.2d 556; Ft. Worth & D. C. Ry. Co. v. Kiel, 143 Tex. 601, 187 S.W.2d 371.

■ Appellant further contends that its culvert in the vicinity of Mississippi Street was sufficient when constructed, and that

conditions have changed since that time—brush has grown up in San Diego Creek, more streets have been paved in Alice, more houses built, etc. This will not excuse appellant for not maintaining proper culverts and sluices under its embankments, as the law requires railroads to meet changes in conditions. Galveston, H. & S. A. Ry. Co. v. Riggs, Tex.Civ.App., 107 S.W. 589.

Appellant's second point is as follows:

"The error of the court in submitting to the jury over appellant's timely objection damage issues as to: (a) whether the houses of plaintiffs, immediately after the flood of 1951, were capable of being repaired and restored to substantially the same condition existing before the flood; (b) the amount of money which would reasonably compensate the plaintiffs for the damage to their houses, coupled with the instruction that the jury will consider cost of repair to restore same to the condition before the flood; instead of submitting the difference in value immediately before and after the injury; (c) the amount of money which would reasonably compensate plaintiffs for the loss or destruction of personal property, considering the reasonable cash value of such property; instead of submitting the difference in actual value before and after the injury for furniture and second-hand household goods, and the difference in market value for other personal property; and (d) the amount of money which would reasonably compensate plaintiffs for damage to personal property, considering cost of repair, instead of submitting the difference in actual value before and after the injury for damaged furniture and other second-hand goods, and the difference in market value, or the cost of repair to restore such property to its condition immediately before the injury, before and after the injury for other personal property."

As germane to the point, appellant cited paragraphs III, IV, V, VII, X and XVIII, of its motion for new trial. In its motion to amend its brief, which we have granted, appellant added paragraphs IX, XVII and XIX. The only paragraph which could be germane to this point is paragraph IX, reading as follows:

"Because the Court erred in overruling the written objections made by this Defendant to the charge of the Court to the Jury, which was duly presented to the Court before the charge was read to the Jury in the proper manner and in the proper time, and by the Court overruled, to which this Defendant excepted, all of which is shown by said written objections here now referred to and made a part hereof."

■ This assignment in the motion for a new trial is too general to be the basis of appellant's second point. If this should be regarded as a sufficient assignment of the error of the court in overruling some specific objection to the charge, then it would be difficult to conceive of any assignment being too general. It is like an assignment that the court erred in overruling all of appellant's objections to the testimony or that the court erred in overruling all of appellant's exceptions to the pleadings. We refuse to consider this point.

Appellant's third point raises the question of "no evidence" or, in any event, insufficiency of the evidence to support the jury's answers to special issues Nos. 8, 8a, 9 and 10, relating to damages.

The recovery here was for the cost of repairing the damaged property, rather than the difference in market value just before and just after the flood damage, and also for the actual value of personal property destroyed or lost in the flood.

■ Under this point appellant argues that the wrong measure of damages was submitted to the jury and that some of the

evidence was erroneously admitted. The point does not include these matters, but only submits the question of sufficiency of evidence or want of any evidence to support the jury findings as to amount of damages.

■ The evidence is sufficient to support the jury's answers to the damage issues. Each of the nineteen appellees testified to the damage done his home by the flood, and the damage to his furniture and other personal property, including that lost or totally destroyed, and gave the cost of repairs or the value of the destroyed property. They each testified that they pointed out the flood damage to their houses and other property to the witness H. J. George, who had experience in building, repairing and remodeling buildings and houses, and was a used furniture dealer, and asked him to examine the property and make estimates of cost of repairs. George estimated the cost of repairs and damage in each instance, and in their answers the jury allowed only one-fourth of George's estimate.

■ Appellant next complains because the court excluded the testimony of the witness Mason, to the effect that the Tex-Mex had in 1954 placed a trestle in its tracks just south of Craig Park. This was done some three years after the flood of 1951. Appellant had plead that the filling in of a former trestle and the substitution of five thirty-inch drainage pipes in the Tex-Mex tracks was the sole proximate cause of appellees' damages. There was no error in excluding the evidence. The fact that after a flood a railroad company made certain improvements is not admissible to prove negligence, as this would prevent the making of improvements. Improvements are always desirable and where they are made following a flood they should not be taken as an admission that the company was negligent in not installing them sooner.

Gulf, C. & S. F. R. Co. v. McGowan, 73 Tex. 355, 11 S.W. 336; Gulf, C. & S. F. R. Co. v. Haskell, 4 Tex.Civ.App. 550, 23 S.W. 546. The fact that the Tex-Mex is not a party to the suit does not change the situation. If a party to the suit may make subsequent improvements without it being admissible against him as an admission of negligence, certainly subsequent improvements made by a third party should not be taken as an admission of negligence.

■ Appellant next complains because the court overruled its plea of res judicata, based on the judgment in Cause No. 8565, entered April 27, 1951. The plea was as to appellees J. Earl Barnhouse, Katie Barnhouse and J. A. Patton. The judgment was an agreed judgment of dismissal with prejudice. The suit apparently was one for flood damages as a result of the 1949 flood. The judgment being an agreed one the pleadings pass out of the case and the judgment becomes both a judgment and a contract, and as the judgment recites nothing more than a dismissal with prejudice it is impossible to learn from it what the agreement actually was. If there was any res judicata in the case it became a question of fact and one that could not be determined by the court as a matter of law, as the court was asked to do here.

■ Appellant next contends that appellees' claims were barred by the two and four-year statutes of limitation. We cannot agree. The claims were for flood damages due to the flood of 1951, and were filed within two years of such flood. The fact that there was a flood in 1949, and that it could then have been determined that there were not sufficient culverts and sluiceways to take care of the waters in times of floods would not start the statute of limitations to run against a landowner for damages that might occur to his house or personal property in a future flood.

The judgment is affirmed.