**Violet Irene NEBEL, as Executrix of the Estate of John J. Nebel, Deceased, and Violet Irene Nebel, in her own capacity, Plaintiffs,**

**v.**

**AVICHAL ENTERPRISES, INC. t/d/b/a Airport Motor Inn and 500 N. Albany, Inc., Defendants.**

Civ. A. No. 86–3293.

United States District Court, D. New Jersey.

April 26, 1989.

Blank, Rome, Comisky & McCauley, P.C. by Stephen M. Orlofsky, Victoria J. Airgood, Cherry Hill, N.J., for plaintiffs.

LaBrum and Doak, P.C. by William F. Keating, Steven J. Blumenthal, Nancy Musser, Woodbury, N.J. and Capehart & Scatchard, P.A., by Thomas H. Morgan, Moorestown, N.J. for defendants.

**OPINION**

COHEN, Senior District Judge:

Before this Court is a motion by defendant, Avichal Enterprises, Inc. d/b/a Airport Motor Inn, for an Order certifying our January 19, 1989 Order (which granted plaintiffs a new trial) for an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).

---

## I. BACKGROUND

This case commenced before a jury on September 26, 1988. After seven days of trial, on October 4, 1988, the jury answered Special Interrogatories which found the defendants negligent, but that such negligence was not "a proximate cause of the [subject incident] and the [p]laintiffs' resulting injuries and damages." A judgment of No Cause For Action was entered by the Court on October 5, 1988.

Plaintiffs thereafter filed a motion for a new trial, pursuant to Fed.R.Civ.P. 59, on the ground that the jury's finding of no proximate cause was against the weight of the evidence. We agreed that the jury's conclusions were at variance with the evidence presented, and by Order and Opinion dated January 19, 1989, we granted plaintiffs' motion for a new trial. In so doing, we also noted "a significant problem." *Nebel v. Avichal Enterprises, Inc.*, 704 F.Supp. 570, 573 (D.N.J.1989). In negligent security cases, New Jersey courts formulate the test for a finding of proximate cause as to whether or not the specific acts of nonfeasance complained of may be viewed as a "substantial factor" contributing to the loss. However, at the post-trial phase of the litigation, plaintiffs, for the first time, called our attention to the fact that in the specific context of lost chance and negligent security cases such as the case at bar, "substantial factor" is articulated in terms of negligence which "increases the risk of harm" to the plaintiff. Our charge to the jury, *see id.* at 579–80, was in accordance with the requests of the

parties, yet at no point did we go as far as to say that the charge, as actually delivered, was wrong *per se* or incorrect as a matter of law. Rather, we stated:

> Although the Court's charge is not incorrect in the strictest sense, it is not as clear as the interests of substantial justice demand. Additional amplification and elaboration on the essential "increased risk of harm" concept would have clarified the charge on proximate cause in a material way.
>
> We believe that in light of the proper proximate cause standard, the jury's verdict was against the great weight of the evidence.

*Id.* at 580. In the motion *sub judice*, defendant submits that our charge to the jury on proximate causation correctly states the applicable standard for proximate causation in a negligent security case, specifically citing the following passage:

> [The jury may find proximate cause if it found] that the negligence of the defendants was an efficient cause of the accident, that is a cause which necessarily set the other causes in motion and was a substantial factor in bringing the incident about.

Defendant's Brief at 6. It is important to point out that our opinion nowhere states we would not have found the jury's verdict against the weight of the evidence but for the absence of additional clarification of the term "substantial factor." Indeed, we would have found the verdict against the substantial weight of the evidence anyway.[1] But the absence of such additional

---

1. In our earlier opinion, we noted that plaintiffs' expert, who testified as to his extensive education and credentials in the field of crime control and crime prevention, thoroughly analyzed the motel's security practices. This expert ultimately concluded that in light of the significant risk of crime in the vicinity of the Inn's premises, which has the highest crime rate, per capita, in the United States, these practices were grossly inadequate and in his opinion, proper security would have deterred the subject criminal activity. The only evidence proffered by defendants on the causation issue was the supposition of its expert that the robbery was an "off the wall" event which the hypothetical security measures suggested by plaintiffs' expert would have been ineffective in preventing. *See Nebel, supra,* 704 F.Supp. at 580.

We found defendants' evidence to be of negligible, if any, probative value for essentially two reasons. First, it was revealed on cross-examination that defendants' expert had an education in "poultry husbandry" and agricultural economics and that nothing in his background reflected particular skill, knowledge or literacy in security practices. Second, the position advocated by defendants' expert, taken to its logical extreme, seems to suggest a tacit assumption that because *all* crime cannot be prevented merely by the invocation of security mechanisms and techniques of any particular kind, *any* strategy undertaken by defendants to cope with the problem is necessarily a reasonable one. The absurdity of such a hypothesis is self-evident, for, under this view, an innkeeper could effectively insulate her/himself from neg-

refinement of the concept of "substantial factor," as defined by New Jersey courts in the lost chance/negligent security context merely served to exacerbate what we considered to already be a miscarriage of justice if we allowed the jury's verdict to stand without a new trial.

## II. DISCUSSION

Generally, under the so-called "final judgment rule," appellate review of a trial court's determination may be had only upon an appeal from a final judgment in the trial court, that is, only after all the issues involved in a particular lawsuit have been finally determined. *See* F. James and G. Hazard, *Civil Procedure* § 12.4 at 657 (1985). *See also* J. Friedenthal, M. Kane and A. Miller, *Civil Procedure* § 13.1 at 579 (West 1985). A statutory exception to the final judgment rule was created by Congress in 1958 and is now codified at 28 U.S.C. § 1292(b).

The Senate Report which supported this legislation, then known merely as the Interlocutory Appeals Act of 1958, stated that the purpose of this statutory exception was to expedite cases before the district courts, where there exists a sizable backlog of cases, because "[t]he substantial delay in the trial of such cases may often result in a denial of justice." S.Rep. No. 2434, 85th Cong., 2d Sess. 4, *reprinted in* 1958 U.S. Code Cong. & Admin.News 5255, 5257. A companion House Report adds that by permitting appeals in nonfinal orders, "protracted and expensive litigation" can be saved, and, with the rule's built in safeguards, *see infra,* "numerous and groundless appeals to our appellate courts" can be filtered out. H. Rep. No. 1667, 85th Cong., 2d Sess. 2 (1958).

The text of 28 U.S.C. § 1292(b), as it appears today, provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Thus, an interlocutory appeal under this section can be properly certified *only* where the district judge *and* the appellate court agree that (1) the order involves a "controlling question of law"; (2) this controlling question of law is one upon which "there is substantial ground for difference of opinion"; *and* (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." It is undisputed that § 1292(b) appeals are addressed to the sound discretion of both courts involved, who must use their authority over interlocutory orders in a way which expeditiously prevents delay in the district courts:

Obviously, such appeals should not be allowed if they are filed solely for the purpose of delay or are based on spurious grounds. In order to eliminate such appeals [28 U.S.C. § 1292(b)] is cast in such a way that the appeal is discretionary rather than a matter of right. *It is discretionary in the first instance with the district judge* for he must state in writing as a part of his order that it is his opinion that the order involves a controlling question of law concerning which there is *substantial doubt* and he must

ligent security liability by implementing a security practice that is merely symbolic or wholly devoid of practical preventative/deterrence value, and the jury would be foreclosed from inquiring into the adequacy of the measures taken.

On balance, the evidence adduced at trial overwhelmingly favored plaintiffs, and we were compelled to conclude that the jury's finding of no proximate cause was against the great weight of the evidence.

further state that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

\* \* \* \* \* \*

The granting of the appeal is also *discretionary with the court of appeals* which may refuse to entertain such an appeal in much the same manner that the Supreme Court today refuses to entertain applications for writs of certiorari.

Senate Report at 5257 (emphasis supplied). The Senate Report concludes that in the final analysis, the success of 28 U.S.C. § 1292(b) depends on "the wisdom of the judges who must administer it." *Id.* at 5258.

In 1958, the year in which the Interlocutory Appeals Act was signed into law, the Third Circuit concluded that:

> It is quite apparent from the legislative history of the Act ... that Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the flood gates to a vast number of appeals from interlocutory orders in ordinary litigation.

*Milbert v. Bison Laboratories,* 260 F.2d 431, 433 (3d Cir.1958). Although the view that § 1292(b) is to be limited to "big" cases has been severely criticized, *see, e.g.,* 9 *Moore's Federal Practice* ¶ 110.22[2] at 261 (1988), a recent empirical survey reveals that almost thirty full years after its enactment, the discretionary interlocutory appeal device is indeed only very seldom utilized. As an example, Professor Wright cites that in the fiscal year 1981, 28,362 appeals were taken to the various Circuit Courts of the United States and contrasts this figure with the fact that:

trial court certificates under § 1292(b) are made only in about 100 cases a year and the courts of appeals allow interlocutory appeal in about half of those 100 cases.

C. Wright, *The Law of Federal Courts* § 102 at 715–16 (West 1985) (citations omitted) (citing Note, *Interlocutory Appeals in the Federal Courts under 28 U.S.C.A. § 1292(b),* 88 Harvard L.Rev. 607, 607 n. 5 (1975)). *See also* J. Friedenthal, M. Kane and A. Miller § 13.3 at 593 n. 19 (citing same).

Consequently, a paucity of case law has developed in the thirty years since the promulgation of 28 U.S.C. § 1292(b), and defendant has proffered but one case to support the proposition that a district court may certify an order granting a new trial. That case however, *Lewis v. Elliott,* 628 F.Supp. 512 (D.D.C.1986), involved a complicated procedural background and holding which limits its applicability to the matter *sub judice.*

Commentators point us in a direction other than that which defendant believes *Lewis* mandates. One authority states that a trial judge's decision to grant a new trial

> is virtually unassailable. In most judicial systems, including the federal courts, an order granting a new trial is interlocutory and cannot be appealed until after a final judgment is entered at the conclusion of the second trial.

J. Friedenthal, M. Kane and A. Miller, § 12.4 at 558. *See also Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) (mandamus inappropriate to obtain review of grant of new trial).[2] Professors Friedenthal, Kane and Miller observe that "some systems permit the grant of a new trial to be appealed immediately," but do not expressly or im-

---

**2.** In broad, but potentially applicable dicta, the Supreme Court noted that:

> [a] trial court's ordering of a new trial rarely, if ever, will justify the issuance of a writ of mandamus. On the contrary, such an Order is not an uncommon feature of any trial which goes to verdict. A litigant is free to seek review of the propriety of such an order on direct appeal after a final judgment has been entered. Consequently, it cannot be said

that the litigant "has no other adequate means to seek the relief he desires." The authority to grant a new trial, moreover, is confined almost entirely to the exercise of discretion on the part of the trial court. Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is "clear and indisputable."

*Diaflon, supra,* 449 U.S. at 36, 101 S.Ct. at 191.

plicitly indicate that any federal courts have so permitted such an interlocutory appeal. *See id.* § 12.4 at 559. It is also instructive that these authors do *not* cross-reference this discussion with their coverage of 28 U.S.C. § 1292(b) elsewhere in their treatise. Similarly, Professor Wright points out that:

> Normally, an order granting a new trial is not appealable, [citing *Diaflon, supra*] except where the trial court has lacked power to grant the new trial. The order is reviewable, however, and *on appeal from the final judgment following the second trial,* the appellant may claim error in the grant of the new trial and seek reinstatement of the verdict at the first trial.

C. Wright, *The Law of Federal Courts,* § 95 at 636–37 (West 1985) (emphasis supplied) (citations omitted except where noted). Finally, a third treatise concurs with the abovementioned analysis:

> An order granting a new trial is not appealable, but it is certainly reviewable. *On appeal from the final judgment following the second trial,* the appellant may claim error in the grant of the new trial. If the appellate court agrees, it will reinstate the verdict reached at the first trial.

C. Wright and A. Miller, 11 *Federal Practice and Procedure* § 2818 at 115 (West 1973) (citing cases) (emphasis supplied).

We have been able to find at least two cases in harmony with the views of these highly respected academicians. In *Massey v. Gulf Oil Corp.,* 508 F.2d 92, 94 (5th Cir.1975), the Court of Appeals for the Fifth Circuit was faced with a situation where a jury returned a general verdict for the plaintiffs. Defendants then moved for judgment n.o.v., or in the alternative, a new trial. The trial judge denied the judgment n.o.v. but granted the motion for a new trial. A second trial was conducted, and this second jury found for the defendant. Plaintiff thereafter appealed the propriety of the order granting the new trial. Significantly, the Fifth Circuit remarked that "[r]eview of the order [granting a new trial] properly awaited the entry of a final judgment following the new trial." *Id.* at 94 (citing 6A Moore's Federal Practice ¶ 59.15[1] at 59–273ff; and 11 *Federal Practice and Procedure* (Wright and Miller Ed.) § 2818 at 115–16). Likewise, the learned Judge Wisdom has duly noted the rule that "[t]he appropriate time to seek appellate review of an order granting a new trial is on appeal from a final judgment after the second trial." *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930 n. 2 (5th Cir.1982). *See also Carpenter v. Klosters Rederi,* 604 F.2d 11, 12 (5th Cir. 1979) ("While an Order granting or denying a new trial is reviewable, it is not an appealable order. It can be reviewed only on appeal from a final judgment....).

One Third Circuit opinion appears, at first blush, to stand for the notion that a § 1292(b) certification is proper after the grant of a new trial but before its commencement, where the trial court believes that he committed an error of law at the first trial. In that case, *Steele v. Wiedemann Machine Co.,* 280 F.2d 380 (3d Cir. 1960), the district judge thought that he had erroneously admitted some evidence, but was not absolutely certain about the applicable legal rule on point. Consequently, the district judge certified under § 1292(b) on the assumption that if the new trial was improvidently granted, the appellate court could prevent a superfluous second trial by reversing the grant. The Third Circuit took the appeal and held, on the merits, that a new trial was not warranted. However, the Third Circuit was careful to warn that if in the future, there is a controlling question of law on the issue of whether or not to grant a new trial, "it would appear to be appropriate to deny the motion and have the question decided on appeal along with other alleged errors, if any." *Id.* at 383. In light of the reasons articulated by the Third Circuit, *see id.* at 383–84, the use of § 1292(b) in the context of motions granting new trials is to be avoided. At least one commentator agrees with this conclusion. *See* C. Wright and A. Miller, 11 *Federal Practice and Procedure*

§ 2803 at 33 (West 1973).[3]

We believe that defendant's motion to certify our January 19, 1989 Order for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) raises the spectre of the type of appellate piecemealing that the Senate expressly repudiated:

> The right of appeal given by [§ 1292(b)] is limited both by the requirement of the certificate of the trial judge, who is familiar with the litigation and will not be disposed to countenance dilatory tactics, and by the resting of final discretion in the Court of Appeals, which will not permit its docket to be crowded with piecemeal or minor litigation.

H.Rep. No. 1667, 85th Cong., 2d Sess. 3 (1958). Defendant shall have an opportunity to raise all of its objections and concerns in one fell swoop at the conclusion of the second trial. An interlocutory appeal in this case would subvert the legislative concerns which inspired the promulgating of § 1292(b) as it appears in its current form, as well as contradict the way § 1292(b) has been applied by various courts and conceptualized by respected commentators. Consequently, defendant's motion will be denied.

An appropriate order shall be entered in conformity with the opinion of this Court.

---

**3.** This commentator, however, severely criticizes the approach of denying motions for new trials which raise controlling questions of law as a matter of course. *See id.* at 33–34.