Richard John STEELE, Plaintiff,
and
Texas Employer's Insurance Association, Intervening Plaintiff,

v.

WIEDEMANN MACHINE COMPANY, Defendant and Appellant.

No. 13134.

United States Court of Appeals
Third Circuit.

Argued May 9, 1960.

Decided June 23, 1960.

Perry S. Bechtle, Philadelphia, Pa. (Thomas E. Comber, Jr., John J. Runzer, Pepper, Hamilton & Scheetz, Philadelphia, Pa., on the brief), for appellant.

Milton M. Borowsky, Philadelphia, Pa. (Abraham E. Freedman, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for Richard John Steele.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The defendant sold and delivered to the Emsco Manufacturing Company (Emsco) an R4P Punch Press. This type machine holds a series of punches and dies which allows the operator to change sizes by merely revolving two turrets to the proper selections. A safety device is designed to prevent tripping the punch if it is not properly aligned with the die below. On August 21, 1953 the plaintiff Steele, an employee of Emsco, was operating the machine when a piece of a punch broke off, striking him and eventually causing the loss of his left eye for which he now seeks damages. The plaintiff Texas Employer's Insurance Association intervened to recover the amounts expended for workmen's compensation benefits paid to Steele and for medical expenses incurred in his behalf plus additional expenditures for the defense of his claim.

Plaintiff based his action on the theory that the injury was caused by a deficiency in the safety system employed on the kind of machine involved. A Mr. Vogt qualified as an expert and testified on behalf of the plaintiff that he examined the punch press four years after the accident and, in his opinion, the safety mechanism was not properly designed.

As part of its defense, Wiedemann was permitted to introduce into evidence a purchase order from Emsco, dated one month after the accident, ordering a new safety lever of the same type as the original. There is no evidence that it was installed. Defendant argues that this document was admissible to impeach plaintiff's expert and as a step in its proof that the design of the lever was not the proximate cause of the injury.

The jury returned a general verdict in favor of the defendant. Subsequently the trial court granted plaintiff's motion for a new trial "upon the narrow legal issue that the Court erred in admitting the document in question." Steele v. Wiedemann Mach. Co., D.C.E.D.Pa.1959, 178 F. Supp. 870, 872. However, the district judge was of the opinion that this was a controlling question of law and certified the same pursuant to 28 U.S.C. § 1292 (b). We allowed an appeal.

The general rule excluding evidence of repairs made after an accident is based on two grounds: (1) Policy purposes because

> " * * * the admission of such acts * * * would be liable to over-emphasis by the jury, and that it would discourage all owners * * * from improving the place or thing that had caused the injury, because they would fear the evidential use of such acts to their disadvantage * * *."

(2) Relevancy theory in that

> "To improve the condition of the injury-causing object is therefore to indicate a belief merely that it has been *capable of causing such an injury,* but indicates nothing more * * *." That therefore "The supposed inference (owner's belief that his negligence caused the injury) from the act is not the plain and most probable one * * *." Wigmore, Evidence § 283, p. 151 and § 32, ex. 2, p. 420 (3 ed. 1940). See 64 A.L.R.2d 1296, 1303 § 3 (b).

Neither reason is applicable because the owner who allegedly made the repairs is not a party to the suit. The evidence does not prejudice him nor was it introduced to prove him negligent so that the general prohibition against that kind of evidence does not operate as a bar in this instance.

The plaintiff attempted to prove that the safety device was defectively designed and from this proof sought to infer that this must have been the proximate cause of the accident. In rebuttal the defense undertook to show that there were other probable causes, i. e. that the original safety lever was missing, worn or broken at the time of the accident. Even where an owner who made repairs is a party, such evidence has been admitted as an exception to the above rule, for the purpose of showing a condition existing at the time of the accident. Johnson v. United States, D.C.Mont. 1958, 163 F.Supp. 388, 395, affirmed 9 Cir., 1959, 270 F.2d 488; 64 A.L.R.2d 1296, 1310, § 6(d); 170 A.L.R. 7, 53–58. The evidence here was competent for that purpose and no policy reason appears whereby it should be excluded.

The plaintiff contends that the document should have been barred because there were other explanations for the purchase equally or more plausible than that the new part was to replace a missing or broken one. To support this plaintiff cites Wigmore, Evidence, § 32 (3 ed. 1940) as follows for the test of admissibility:

> "Does the evidentiary fact point to the desired conclusion (not as the only rational hypothesis, but) as the hypothesis (or explanation) more plausible or more natural out of the various ones that are conceivable?"

He then proposes what he conceives as more plausible explanations of why the new part was purchased:

> "(a) Emsco wanted to order a new safety lever to compare it with the one on the machine to determine whether anything was wrong with it.

> "(b) Emsco wanted to take off Part 55 in good condition and re-

place it with a new one in the hope that it would insure the working of the safety mechanism should there be a repetition of the conditions surrounding Steele's accident.

"(c) Emsco wanted to stock the part as a spare part in the event that it broke or failed to function properly to avoid delay in using the machine."

It is impossible to perceive why these are more plausible. In any case, plaintiff failed to cite the alternate test from the same paragraph in Wigmore:

"Or (to state the requirement more weakly), *is the desired conclusion* (not, the most natural, but) *a natural or plausible one among the various conceivable ones?*"

That entire section dealing with the theory of relevancy, Wigmore, supra, §§ 30–36 can be summarized as: every evidentiary fact may call for two processes:

1. The admissibility of the original fact from the proponent, subject to the test whether the claimed conclusion is a probable one, and

2. The admissibility of explanatory facts from the opponent by pointing to the existence and probability of other hypotheses. Wigmore, supra, § 36. So in this trial, the plaintiff as proponent attempted to force the conclusion that defective design of the safety device caused the injury. The defendant, as opponent, tried to explain this away by showing the existence of other probable causes and in the process introduced the purchase order as some proof that a missing or worn part could have caused the injury. Then the plaintiff, as opponent of the latter hypothesis, attempted to show other probable reasons for the purchase order.

■ The plaintiff seeks, in effect, to shift the entire burden of proof to the defendant. But it was the burden of the plaintiff, not the defendant, to prove his theory was the single, most probable cause of the injury. The defendant needed only to offer other probable

causes, and evidence bearing on them was admissible. The question of the value of the evidence as proof of the desired conclusion was for the determination of the jury. Therefore the district judge properly admitted the purchase order into evidence.

■ The defendant also urges that the document was competent for the purpose of impeaching the expert witness. The expert's testimony was to the effect that the *type* of safety system was defective, not just the particular one on the machine at the time of the accident. In view of this the circumstance that a new lever of the same type as the original may have been substituted at a later date would not be relevant for purposes of impeachment. But since the document was admissible for other reasons, it should have been received into evidence with its application limited. There was no request to restrict the purpose of the document.

■ The use of the discretionary interlocutory appeal under § 1292(b), 28 U.S.C. in the present situation is directly at odds with the purpose of that section. The need to expedite litigation pending in the district courts and consideration of time and expenses of the parties were motivating forces of the passage of the bill. U.S.Code Cong. & Adm.News, pp. 5255, 5256 (1958). But where there is a controlling question of law on the issue of whether or not a new trial should be granted it would appear to be appropriate to deny the motion and have the question decided on appeal along with other alleged errors, if any. Should the appellate court find reversible error it would order the new trial. On the other hand a finding of no error would terminate the litigation (subject of course to seeking certiorari, etc.). Where a motion for a new trial is granted and a controlling question is certified, a finding of no reversible error, as in this appeal, opens the possibility of another appeal by the disappointed party below on other grounds. In effect then, there is an appeal by the litigant losing on the motion and a later appeal by the one adversely

affected by the original judgment or verdict.

The cause will be remanded to the district court with directions that the order granting a new trial be vacated and judgment entered on the verdict rendered in the trial.