Maria **BEAVERS, Individually and on Behalf of Minor Children Carey BEAVERS, Jr. and William Beavers, III and by and on Behalf of William Beavers and Mary Beavers, Surviving Parents, Appellants,**

v.

**NORTHROP WORLDWIDE AIRCRAFT SERVICES, INC., Appellee.**

No. 07–90–0093–CV.

Court of Appeals of Texas, Amarillo.

Nov. 13, 1991.

On Rehearing Jan. 9, 1992.

Second Rehearing Overruled Feb. 10, 1992.

Smith, Jarrell & Associates, Ed McConnell, Amarillo, John H. Green, Odessa, Law Offices of C.L. Ray, Charles B. Lord, Byrd, Davis & Eisenberg, James H. Furman, Austin, for appellants.

Cowles & Thompson, R. Brent Cooper, Michael W. Huddleston, Teresa G. Bohne, Dallas, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellants Maria Beavers, individually and on behalf of her minor children Carey Beavers, Jr. and William Beavers III, and surviving parents William Beavers and Mary Beavers, bring this appeal from a take-nothing judgment in favor of appellee Northrop Worldwide Aircraft Services, Inc. (Northrop). This suit arises from a helicopter crash in which Army Captain Carey Beavers was killed. Northrop had at one time been the civilian company responsible for the maintenance of the helicopter. Captain Beavers was the husband of Maria Beavers, the father of the two minor children, and the son of William and Mary Beavers. The basis of appellants' suit was that Northrop had negligently maintained the helicopter which crashed, resulting in Captain Beavers' death. We affirm the judgment of the trial court.

In pursuit of their appeal, appellants raise nine points of error. In points (1) through (3), they assert the trial court erred in failing to strike two jurors who were disqualified for cause. In the remainder of their points, they argue the trial court (4) violated Texas Rule of Civil Evidence 803(8)(C) by admitting untrustworthy portions and unsubstantiated conclusions in U.S. Army reports; erred in (5) admitting evidence of subsequent remedial measures in violation of Texas Rule of Civil Evidence 407(a); (6) admitting evidence of other incidents or accidents without any predicate

showing of similarity; (7) failing to grant a new trial because the jury's verdict is against the great weight and preponderance of the evidence; (8) allowing a jury argument delivered by Northrop's counsel which was grossly improper, inflammatory, and unduly prejudicial; and (9) refusing to grant a new trial based upon Northrop's jury argument concerning the real world and the lawsuit world.

■ Reiterated, in their first three points of error, appellants assert that the trial court erred in failing to strike two jurors who were disqualified for cause. However, appellants did not notify the trial court about the objectionable jurors until after they had exercised their peremptory strikes. The seminal case in this area is *Hallett v. Houston Northwest Medical Center*, 689 S.W.2d 888, 890 (Tex.1985). The teaching of that case is, in order to preserve error in such a situation, a party must advise the trial court of two things prior to exercising his peremptory jury challenges: first, that he will exhaust his peremptory challenges, and second, that after exercising his peremptory challenges, specific objectionable jurors would remain on the jury list. The court specifically cautioned that "[a] complaining party waives any error by not timely bringing such error to the attention of the trial court prior to making his peremptory challenges." *Id.*

*Hallett* does not require a party to inform the court which jurors the party will peremptorily strike. It does require, however, that the trial court be told specifically which objectionable jurors will remain after those strikes are made and requires that notification be made prior to the actual exercise of those strikes.

In *Carpenter v. Wyatt Construction Co.*, 501 S.W.2d 748, 751 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.), the court aptly stated the rationale for the rule as follows:

Appellants insist that to require them to make known the objectionable juror before the exercise of peremptory strikes is to give an unfair advantage to the other side "of being able to weigh possible error against the desirability of changing

its peremptory challenges." We can not accept this argument. Appellants have no vested interest in error. A party would only be required to make known the objectionable juror that he is being forced to accept by reason of the failure of the court to sustain his challenge for cause. If the other side elects to strike this objectionable juror he should have no standing to complain. If the rule were otherwise, it is likely that advocates would always point out one of the twelve on the jury as being "objectionable."

*Id.* at 751. Since appellants failed to take the requisite steps to preserve error prior to their exercise of peremptory strikes, the first three points present nothing for our review and are overruled.

In their fourth point of error, appellants assert that the trial court erred in admitting untrustworthy portions of an Army report. Texas Rule of Civil Evidence 803(8) creates a hearsay exception for public records and reports. However, the exception does apply "unless the sources of information or other circumstances indicate lack of trustworthiness." Tex.R.Civ.Evid. 803(8). Appellants specifically urge that the portions of the Army report containing preliminary opinions and conclusions were untrustworthy and do not fit into the exception.

■ Initially, we note that Northrop alleges that appellants waived this error because they failed to get a ruling on an objection made by them at an evidentiary hearing prior to voir dire on a motion in limine, and that appellants failed to object at that time to the court's failure to rule. However, a proper objection made at the time evidence is offered is sufficient to preserve an asserted error in the admission of the evidence, and a motion in limine is not a necessary predicate for complaint. *Bridges v. City of Richardson*, 163 Tex. 292, 354 S.W.2d 366, 367–68 (1962). Thus, the failure to obtain a ruling or object to the court's failure to rule on appellants' motion in limine did not waive any error in the admission of the evidence, if a proper objection was made when it was tendered into evidence.

However, Northrop also contends appellants failed to timely object and thereby waived error. While an expert witness, Dr. Paul F. Packman, earlier testified that he used parts of the Army report in formulating his opinion, it was only after Northrop then offered the report into evidence that appellants objected. We do not find that objection untimely. While it is true that appellants did not object to Dr. Packman's testimony that he relied upon parts of the report in making his conclusions, that testimony is not the object of appellants' complaint here. Rather, they complain of portions of the report itself being received in evidence. Packman's testimony that he relied upon the report presents a different question from that presented by the receipt of the contents of the report into evidence.

The testimony of an expert may be admissible while at the same time the facts or data underlying that testimony may be inadmissible. Tex.R.Civ.Evid. 703; *Welder v. Welder*, 794 S.W.2d 420, 430 (Tex.App.—Corpus Christi 1990, no writ). Texas Rule of Civil Evidence 705 states that an expert *may* disclose the facts or data underlying his opinion. However, the use of the permissive word "may" does not indicate an absolute right of the expert to disclose all of the facts and underlying data under all circumstances. The better judicial position is not to allow the affirmative admission of otherwise inadmissible matters merely because such matters happen to be underlying data upon which an expert relies. *First Southwest Lloyds Ins. v. MacDowell*, 769 S.W.2d 954, 957–58 (Tex. App.—Texarkana 1989, writ denied). That being so, the challenged portions were not automatically admissible because of Dr. Packman's testimony, and appellants' objection at the time they were actually tendered in evidence was sufficient to preserve the question as to their admissibility unless otherwise waived.

Northrop also suggests that appellants waived any error by their offer of evidence from the report and by offering another copy of the report. However, appellants' tender occurred only after their objection to Northrop's evidence was overruled. After their objection was overruled, appellants were not required to sit by and take their chances on appeal if incompetent evidence was admitted, but were entitled to explain, rebut, or demonstrate the untruthfulness of the evidence without waiving their objection. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 4 (Tex.1986). We find no waiver of appellants' right to raise the question presented by this point of error.

As we noted above, appellants base their challenge on the basis that the portions in question lack the trustworthiness required under Texas Rule of Civil Evidence 803(8). It is true that in matters of state law, state courts are not bound by decisions of federal courts of appeals. *Wichita Royalty Co. v. City Nat. Bank*, 306 U.S. 103, 109, 59 S.Ct. 420, 83 L.Ed. 515, 519 (1939); *Hayes v. Pin Oak Petroleum, Inc.*, 798 S.W.2d 668, 672 n. 5 (Tex. App.—Austin 1990, writ denied); *Barstow v. State*, 742 S.W.2d 495, 500–01 (Tex. App.—Austin 1987, writ denied).

Federal Rule of Evidence 803(8) is identical to Texas Rule of Civil Evidence 803(8) with the exception that the "lack of trustworthiness" proviso in the Texas rule is applicable to all three subdivisions rather than just to subdivision C as in the federal rule. That being so, and since the federal rules of evidence are the precursors of our rules of civil evidence, in areas such as this one, where there is a paucity of state authority, the federal cases interpreting the federal rule are very persuasive in our interpretation of our Rule 803(8). In *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir.1991), the Court determined that the federal rule created a presumption of admissibility and the party opposing the admission of such a report must prove the report's untrustworthiness with the trial court's action on the tender being measured by an abuse of discretion standard. En route to that holding, the Court noted that the rationale for the exception for public records contained in Rule 803(8) is premised on the assumption that public officials perform their duties properly with-

out motive or interest other than to submit accurate and fair reports. We think that the question decided by the *Moss* Court is analogous to the question before us and its reasoning and construction of Federal Rule 803(8) is applicable to our State Rule 803(8). Accordingly, we hold that Texas Rule of Civil Evidence 803(8) likewise creates a presumption of admissibility, with the burden being placed on the party opposing the admission of the report to show its untrustworthiness. The trial court's action in ruling upon the tender of such a report would be measured by an abuse of discretion standard.

In *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), the court instructs us that:

> The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. (Citation omitted). Another way of stating the test is whether the act was arbitrary or unreasonable.

*Id.* at 241–42.

■ The thrust of appellants' attack upon the admission of the report was directed at the portions containing the investigation and conclusions of R.L. Fritz, a civilian investigator who worked at the Corpus Christi Army Depot, whose qualifications they questioned. They also argued the report's lack of final conclusions and recommendations made it impossible to tell if the investigating Accident Board concurred with Fritz's conclusions, thereby undermining the trustworthiness of the portions challenged.

We do not find that the trial court abused its discretion in admitting the Army report. Fritz's activities were only part of the report. Many other persons, none of whose qualifications were attacked, were involved in preparation of the report. It was timely undertaken after the helicopter crash and was not prepared with an eye toward litigation.

■ In the *Moss* case, the Court noted that, under the rule, the trial court must focus upon the trustworthiness, *i.e.*, the methodology of the report and leave the jury to make credibility decisions and determine what weight to afford a report's finding. 933 F.2d 1300, 1306–08 (5th Cir.1991). Again, we think the holding in that regard by the *Moss* Court is persuasive and we hold it is applicable to our state rule. Parenthetically, appellants do not attack the methodology with which the report was prepared. In overruling appellants' objection, the trial judge properly commented he was making his ruling on the basis of the report's reliability.

■ In *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), in considering Federal Rule 803(8)(C), the Court commented that as long as an investigatory report was based upon a factual investigation and satisfied the rule's trustworthiness requirement, conclusions or opinions contained therein should be admissible along with other portions of the report. *Id.* 488 U.S. at 170, 109 S.Ct. at 450, 102 L.Ed.2d at 463. In additional explication, the Court noted "the admission of a report containing 'conclusions' is subject to the ultimate safeguard—the opponent's right to present evidence tending to contradict or diminish the weight of those conclusions." *Id.* 488 U.S. at 168, 109 S.Ct. at 449, 102 L.Ed.2d at 462. Again, we find those observations applicable to Texas Rule 803(8). In the instant case, appellants had sufficient opportunity to present evidence attacking the report's conclusions. In fact, appellants presented portions of the report, the entire report, and portions of the deposition of Fritz (whose conclusions in the report were attacked by appellants) in refuting portions of the Army report.

In light of the entire record, we find the trial judge did not abuse his discretion in admitting the Army report. Appellants' fourth point of error is overruled.

■ In their fifth point of error, appellants contend that the trial court erroneously admitted evidence of subsequent re-

medial measures. The evidence in question was introduced by Northrop and had to do with subsequent remedial measures made by the Army, which is not a party to this suit. Those measures concerned changes in the way maintenance was performed as well as contemplated changes in the helicopter's design. This evidence suggested that the Army's actions, and not those of Northrop, were responsible for the crash.

Texas Rule of Civil Evidence 407(a),[1] in relevant part, states that evidence of subsequent remedial measures is not admissible to prove negligence or culpable conduct. *Texas and New Orleans R.R. Co. v. Barnhouse*, 293 S.W.2d 261 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.), decided long before the adoption of the Rules of Civil Evidence, is the only Texas case we have found which addresses the question before us, *i.e.*, whether subsequent remedial measures taken by a third party are admissible as indicating that the negligence of the third party, rather than that of a party to the case, might have been responsible for the occurrence giving rise to the suit. In that case, in a single conclusory sentence and without any discussion of their reasoning or policy in doing so, the court held that the exclusion of such evidence was not reversible error. *Id.* at 266.

On the periphery of the question before us, this court, in *Burnett v. Rutledge*, 284 S.W.2d 944 (Tex.Civ.App.—Amarillo 1955, writ ref'd n.r.e.), addressed a similar question of admissibility of evidence of subsequent remedial measures by a third party. In that case, this court held that the evidence was not admissible.

However, that case did not address the exact question before us now. In *Burnett*, the evidence was offered to show that the defendant was negligent. *Id.* In the present case, the evidence was offered to show that the defendant's conduct was not the cause of the accident.

Rule 402 now provides that all relevant evidence is admissible except as otherwise provided by statute or rule. Rule 401 defines relevant evidence as "evidence having any tendency to make the relevance of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The evidence in question is "relevant" under that definition. We must, therefore, examine Rule 407(a) to determine if that rule would exclude the evidence in question.

With the exception of a provision specifically stating the rule does not preclude admission of subsequent remedial measures in cases dealing with product liability based upon strict liability, Rule 407 is identical to Federal Rule of Evidence 407. Rule 407(a) carries forward a longstanding Texas policy that prospective defendants should not be discouraged from making subsequent safety improvements for fear that such improvements will be admissible against them as evidence of their liability. *See, e.g., Texas Trunk R. Co. v. Ayers*, 83 Tex. 268, 18 S.W. 684, 685–86 (1892). The policy giving rise to the federal rule is the same as that giving rise to our rule. *See, e.g., In Re Aircrash in Bali, Indonesia*, 871 F.2d 812, 816–17 (9th Cir.1989), *cert. denied*, 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989); *Grenada Steel Indus. v. Alabama Oxygen Co.*, 695 F.2d 883, 889 (5th Cir.1983).

It is well established in federal jurisprudence that Federal Rule 407 does not exclude evidence of subsequent remedial measures of third parties because the policy behind Rule 407 is not served in such instances. *E.g., Herrington v. Hiller*, 883 F.2d 411, 415 n. 11 (5th Cir.1989); *In Re Aircrash in Bali, Indonesia*, 871 F.2d 812, 816–17 (9th Cir.1989), *cert. denied*, 493 U.S. 917, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989); *Farner v. Paccar, Inc.*, 562 F.2d 518, 528 n. 20 (8th Cir.1977). In such circumstances, the party making the repair is not penalized by the admission of the evidence. *E.g., Grenada Steel Indus. v. Alabama Oxygen Co.*, 695 F.2d at 889; *Louisville & Nashville R.R. Co. v. Williams*, 370 F.2d

---

**1.** Subsequent references to rule numbers in our discussion of this point are to those Texas Rules of Civil Evidence unless otherwise indicated.

839, 844 (5th Cir.1966). We find the reasoning in these cases persuasive.

Texas Rule of Civil Evidence 407 was adopted on November 23, 1982 (effective September 1, 1983). At the time of its adoption, federal courts had construed Federal Rule 407 as not being applicable to subsequent changes by third parties as the policy behind Rule 407 was not served in such instances. *Farner v. Paccar, Inc.*, 562 F.2d 518, 528 n. 20 (8th Cir.1977); *Lolie v. Ohio Brass Co.*, 502 F.2d 741, 744 (7th Cir.1974); *Wallner v. Kitchens of Sara Lee, Inc.*, 419 F.2d 1028, 1032 (7th Cir. 1969); *Louisville & Nashville R.R. Co. v. Williams*, 370 F.2d 839, 843–44 (5th Cir. 1966); *Steele v. Wiedemann Mach. Co.*, 280 F.2d 380, 382 (3rd Cir.1960).

We also note the policy expressed by our Texas Supreme Court in *Blackmon v. Hansen*, 140 Tex. 536, 169 S.W.2d 962, 964–65 (1943). In that case, in interpreting a Texas statute which was enacted almost identically to a federal statute, the Court declared:

> The Texas statute having been literally taken from the Federal statute, the presumption is that the Texas Legislature knew of the construction given such statute at the time of its adoption, and intended to adopt such statute as construed by the Federal courts; and such statute is to be considered by the courts of this State in the light of such construction. *Blackmon v. Hansen*, 140 Tex. 536, 169 S.W.2d 962, 964–65 (1943).

Similarly, and as we noted above, Rule 407 is, in relevant part, virtually identical with Federal Rule of Evidence 407. Therefore, it is persuasive that the Texas Supreme Court knew of the construction given Federal Rule of Evidence 407 at the time of its adoption and in the absence of adverse decisions by it or statutory mandates to the contrary and intended to adopt the rule of evidence as construed by the federal courts. The Texas Rule should be considered by the courts of this state in light of such construction.

*Texas and New Orleans R.R. Co. v. Barnhouse, supra*, was decided long prior to the adoption of our Rules of Civil Evidence and its holding was made without consideration of the policy implications of Rules 401, 402, and 407 and the construction given the Federal Rules, which were the progenitors of those rules. Thus, we do not find it persuasive or determinative of the question before us.

Accordingly, we hold the exclusion under Rule 407(a) does not apply to evidence of subsequent remedial measures taken by third parties when offered to show that a defendant was not the cause of plaintiff's injury. Again, as we observed in our discussion under appellants' fourth point, the admission of such evidence is subject to the ultimate safeguard of the opponent's right to present evidence tending to diminish the weight of, or to contradict, such evidence. Thus, the trial court did not err in admitting the evidence of the subsequent remedial measures by the Army. Appellants' fifth point of error is overruled.

■ In their sixth point of error, appellants urge that the trial court erred in admitting evidence of other incidents or accidents without a predicate showing of substantial similarity. The testimony in question was that of Northrop's witness, William John Derner. Over objection, Derner testified about three bearings which he said exhibited a pattern of failure similar to that which had occurred in the crashed helicopter. His only identification of the bearings was that it had been represented to him that they were typical of bearings being removed from service because of fatigue problems.

For the testimony to be admissible, Northrop was required to lay a predicate that the bearing failures occurred under reasonably similar, but not necessarily identical, circumstances. *E.g., Missouri R.R. Co. v. Cooper*, 563 S.W.2d 233, 236 (Tex.1978); *E–Z Mart Stores, Inc. v. Terry*, 794 S.W.2d 63, 65 (Tex.App.—Texarkana 1990, writ denied).

■ Under examination, Derner admitted that he did not know the type of aircraft from which any of the bearings he examined came, the hours of service to which the bearings had been put prior to

**678**

showing signs of fatigue, and the type of rotor blades that were on the helicopters from which the bearings came. The lack of knowledge as to the type of rotor blades was especially significant, as one of Northrop's trial contentions was that different types of rotor blades caused different stress levels on the bearings. Additionally, although he testified that the bearings had been represented to him as being *typical* of bearings being removed from Cobra AH–1 helicopters, he did not testify that the bearings he examined were ever actually used in helicopters of the same type as that involved in the crash. While a showing of substantial similarity might not necessarily involve a showing that the bearings came from the same model helicopter, at a minimum it should have been shown that the bearings were the type used in, and were taken from, the same general type of helicopter (AH–1) as the helicopter in controversy.

In summary, we agree with appellants that no predicate of substantial similarity was laid and the trial court erred in admitting the evidence. However, that decision does not end our quest.

■■■■ Error is not harmful unless it "was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellate court." Tex.R.App.P. 81(b)(1). Appellants have not alleged, nor is there any indication, that the error prevented appellants from making a proper presentation of the case to this court.

Appellants do contend that the erroneously admitted evidence led the jury to believe that the Army had incurred several bearing failures, while such failures were actually quite rare. However, there was other evidence presented at trial by both parties of other bearing failures in AH–1 helicopters. Indeed, appellants' expert, Dr. Packman, testified that all bearings will eventually fail. Thus, this evidence was cumulative of other similar evidence.

It is established that an erroneous ruling upon the admissibility of cumulative evi-

dence is not ordinarily reversible, *Whitener v. Traders and General Insurance Co.*, 155 Tex. 461, 467, 289 S.W.2d 233, 236 (1956), and the admission of incompetent evidence does not constitute reversible error when there is other competent evidence in the record on the same question. *Mandril v. Kasishke*, 620 S.W.2d 238, 249 (Tex. Civ.App.—Amarillo 1981, writ ref'd n.r.e.). In view of all the evidence presented at trial, we do not find that the error probably caused rendition of an improper judgment. Appellants' sixth point of error is overruled.

■■■■ In their seventh point of error, appellants argue that the trial court erred in not granting their motion for new trial because the jury's failure to find negligence and proximate cause on the part of Northrop is against the great weight and preponderance of the evidence. In determining an attack of this nature, an appellate court must consider and weigh all the evidence, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985). In a situation involving a jury's failure to find a fact, we are also cautioned that reversal is warranted only after a detailing of evidence, under the criteria set out in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986), which indicates that the *great* weight of the evidence supports an affirmative answer. *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988).

■■■■ In their suit, appellants asserted that Northrop was negligent in (1) using an improper grease, (2) using an improper maintenance procedure, and (3) failing to supply adequate information to the Army of a previous swashplate (which contains the bearing) malfunction in the same helicopter that later crashed.

In disputing that it used an improper grease on the helicopter which crashed, Northrop developed evidence that another company had assumed maintenance over four months prior to the accident, in less than four months any improper grease ap-

plied by Northrop would have been purged, and the AH–1 helicopters had flown for years using the "improper grease." In response to the allegation of improper maintenance procedure, Northrop presented evidence that they had followed Army maintenance manuals and had received Army authorization for their maintenance procedures.

Regarding the allegation of failure to supply sufficient information of an earlier swashplate failure, Northrop developed evidence that they had reported the earlier failure as a highest priority report (a life threatening situation) and that the Army had downgraded the occurrence. Though appellants asserted that Northrop was responsible for the Army's action, such assertion was based on assumptions and speculation of what later communications were between the Army and Northrop.

Additionally, Northrop presented evidence that a product defect, and not improper maintenance, caused the accident. Typical of this was evidence of a request by the Army to the manufacturer for a bigger, stronger bearing. Appellants also based much of their evidence on the opinions of a top Army official, Frank Barhorst, which were merely presented through the testimony of other witnesses. The absence of direct testimony could have easily been a significant factor for the jury in assessing the weight to be given regarding opinions represented to have been those of Barhorst.

Although the above evidence is merely some of the extensive evidence developed by both parties at trial, it is illustrative of evidence tending to refute allegations of Northrop's liability. In our review of all of the evidence presented at trial, we cannot find that the verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We must hold, therefore, that the trial court did not err in failing to grant a new trial on such grounds. Appellants' seventh point of error is overruled.

In their eighth and ninth points of error, appellants contend that Northrop's jury argument was improper. Northrop correctly argues that appellants have waived their right to complain of any curable arguments by failing to obtain a ruling upon any objection to the argument, by failing to object to any failure by the trial court to rule upon an objection, and by failing to request an instruction or to move for a mistrial. *See State Department of Highways and Public Transportation v. King*, 795 S.W.2d 888, 896 (Tex.App.—Beaumont 1990), *cert. denied*, 808 S.W.2d 465; *Reed v. State*, 794 S.W.2d 806, 811 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). However, the thrust of appellants' contention under these points is that the argument was incurable and violated the tenets explicated by the court in *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979), and their principal reliance is upon that authority. It is established that an incurable argument does not require the predicate of an objection. *See* Tex.R.Civ.P. 324(b)(5); *e.g.*, *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex.1968); *Texas Employers' Ins. Ass'n v. Guerrero*, 800 S.W.2d 859, 863 (Tex.App.—San Antonio 1990, writ denied).

In the *Standard Fire Insurance* case, the court held that a complainant arguing improper jury argument must prove: (1) an error (2) that was not invited or provoked (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. With the comment that there are only rare instances of incurable harm from incurable argument, the court went on to say that a complainant raising that question had the further burden:

to prove (5) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned, and whether there was cumulative error are proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must

come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument.

*Id.* at 839–40. The court concluded its explication with the admonition that "the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence." *Id.* at 839–40. In its opinion, the court gave some examples of incurable arguments such as: (1) an appeal to racial prejudice; (2) use of epithets such as "liar," "fraud," "cheat," and "imposter;" and (3) an unsupported charge of perjury.

During closing argument, Northrop's counsel intimated that appellants' counsel had misrepresented facts to the jury in what counsel referred to as "the lawsuit world." The following quote is an example:

> In this world, it's a world sometimes of twisting, turning, exaggerating, repeating over and over, misstatement of facts, until the hope is that some people of twelve will accept those as true facts.

██ Attacks on the integrity of opposing counsel are improper. *American Petrofina, Inc. v. PPG Industries, Inc.,* 679 S.W.2d 740, 755 (Tex.App.—Fort Worth 1984, writ dism'd by agr.), and it is improper to argue that opposing counsel has made misrepresentations to the jury when there is no basis in the record for the accusation. *E.g., Montgomery Ward & Co. v. Brewer,* 416 S.W.2d 837, 845–48 (Tex.Civ.App.—Waco 1967, writ ref'd n.r.e.); *T.E.I.A. v. Butler,* 287 S.W.2d 198, 200–02 (Tex.Civ. App.—Fort Worth 1956, writ ref'd n.r.e.). Since there is no basis in the record to support the allegation that appellants' counsel misrepresented facts to the jury, this argument was improper and it becomes our duty to determine if it was incurable.

██ An incurable jury argument occurs when its harmful or acutely prejudicial nature is such that a juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for

such argument and its effect cannot be cured by an instruction to disregard. *Gannet Outdoor Co. of Texas v. Kubeczka,* 710 S.W.2d 79, 86 (Tex.App.—Houston [14th Dist.] 1986, no writ).

██ While we do not approve of this type of argument, our examination of the record as a whole convinces us that the argument was not of such an extreme nature as to reflect the greater probability that a juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that which he would have agreed but for the argument. Neither does that record show the probability that the improper argument causing harm is greater than the probability that the verdict was grounded on the proceedings and the evidence. Appellants' eighth and ninth points are overruled.

In summary, all of appellants' points are overruled and the judgment of the trial court affirmed.

## ON MOTION FOR REHEARING

In their first point of error in their motion for rehearing, appellants contend that they complied with the requisites delineated in *Hallett v. Houston Northwest Medical Center,* 689 S.W.2d 888, 890 (Tex.1985), and thus properly preserved error regarding the trial court's failure to strike two jurors for cause.

The record shows that subsequent to the completion of the voir dire examination of the jury panel, the panel was excused while the trial jury was selected. At that time, appellants objected to potential jurors Reese and Stafford, both of which objections were overruled. They also requested additional peremptory strikes for the purpose of striking those jurors. That request was denied. Appellee's counsel then requested an additional five-minute delay "to consider this list."

Next, the recitation by the trial court addressed each of the parties' counsel and received from each an affirmative reply. Apparently, this was for the purpose of the delivery by counsel of their strike lists. The record then shows the trial judge's

comment that appellee's counsel had an additional objection "he'd like to make for the record." At that time, appellants' trial counsel informed the court with regard to juror Reese, "we have used peremptory challenge on him," and "As a result, we have been forced to leave on the jury and not strike" juror Stafford. He went on to say Stafford was objectionable to them and asked for an additional peremptory strike to use against Stafford, which was refused. Counsel then asked the court to note that appellants had not stricken Stafford, but "with regard to Mr. Stafford and our objection to him in our request for the peremptory challenge made before and for additional peremptory strike," they had been forced to take juror Rossi, who was objectionable to them.

Reiterated, the *Hallett* Court instructs that it is incumbent upon an objecting party, prior to making its peremptory challenges, to advise the trial court (1) it would exhaust its peremptory challenges, and (2) that after exercising those peremptory challenges, specific objectionable jurors would be left on the jury list. En route to that explication, the Court had noted that a prior challenge for cause to a juror was not sufficient to preserve asserted error. *Id.* at 889–90.

■ Peremptory strikes are exercised by a party's actions and not by the actions of the trial court in determining which juror remains and seating the jury. *See Hallett v. Houston Northwest Medical Center*, 689 S.W.2d 888 (Tex.1985). By delivering the list of peremptory challenges to the court, a party "exercises" its peremptory challenges.

■ The record indicates that appellants exercised their strikes prior to attempting to preserve error. The only request by the court for the lists occurred prior to appellants' attempt at preserving error. The parties verbally responded in the affirmative. From the record, it appears that this occurred when the lists were delivered and the peremptory strikes were exercised. This is also indicated by the fact that during appellants' attempt at preserving error, appellants repeatedly re-

ferred to their peremptory strikes in the past tense. Furthermore, after appellants' attempt at preserving error, the record reveals no request by the court for the lists or anything else to indicate the lists were delivered after appellants' attempt at preserving error.

■ Appellants also contend that the record does not reveal when appellants' list of peremptory challenges were delivered to the court. Even if the record could not be construed to indicate when the list was delivered, no error has been preserved. After describing the requirements for preservation of error in this situation, including the time requirement that the court be notified prior to the exercise of a party's peremptory strikes, the Court in *Hallett* stated that "absent such notice" a party waives any error. *Id.* at 890. It is the burden of appellants to present a sufficient record to show error requiring reversal. Tex.R.App.P. 50(d). Thus, if the record does not reveal that notice was given timely, no error is preserved for appellate review.

Additionally, Tex.R.App.P. 81(b)(1) provides no judgment shall be reversed unless "the error complained of amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case." Tex.R.Civ.P. 292 allows the rendition of a verdict in a civil case by ten members of the trial jury.

■ The two trial jurors about whom appellant complains are Mr. Stafford and Mr. Rossi. The record shows the verdict in this case was an eleven-to-one verdict. Rossi did not join in that verdict. Thus, even assuming, arguendo, that both Rossi and Stafford were not qualified, the verdict was returned by a sufficient number of qualified jurors and no reversible error is shown. *See Palmer Well Serv. v. Mack Trucks, Inc.*, 776 S.W.2d 575, 577 (Tex. 1989).

Appellants' first point of error is overruled. Appellants' remaining points of error have been adequately addressed in our original opinion and we remain convinced

that our prior disposition was correct. Accordingly, all of appellants' points of error contained in their motion for rehearing are overruled.